Texas & Pacific Railway Company v. Susan H. Shoemaker et al.

No. 1394.   Decided February 13, 1905.

**Railway—Negligence—Sufficiency of Evidence.**

Evidence attending the death of two boys run over by a railway train considered and held insufficient to support an inference that it was caused by negligence of defendant, the proof failing to disclose the situation of the parties at the time or to show that their death was due to an omission of duty by those operating the train. (Pp. 452-457.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Parker County.

Shoemaker sued the railway company and obtained judgment which was affirmed on appeal by defendant, who thereupon secured writ of error.

*H. C. Shropshire* and *B. G. Bidwell,* for plaintiff in error.—Where the evidence shows that the plaintiff's sons were guilty of contributory negligence in going on the railroad track and remaining there until they were run on and killed, and that they were trespassers or mere licensees, that the engineer is not proven to have seen them, the court should have charged the jury to find for the defendant. St. Louis S. W. Ry. Co. v. Shiflet, 83 S. W. Rep., 677; Galveston H. & S. A. Ry. Co. v. Ryon, 70 Texas, 56; Galveston H. & S. A. Ry. Co. v. Ryon et al., 80 Texas, 59; St. Louis S. W. Ry. Co. v. Shiflet, 94 Texas, 131; Hughes v. Railway Co., 67 Texas, 595; Artusy v. Railway Co., 73 Texas, 191; Smith v. Railway Co., 17 Texas Civ. App., 502; Texas & P. Ry. Co. v. Roberts, 14 Texas Civ. App., 532; Blankenship v. Railway Co., 15 Texas Civ. App., 82; Kuehn v. Railway Co., 10 Texas Civ. App., 649; Lyons v. Railway Co., 59 S. W. Rep., 507; Missouri P. Ry. Co. v. Brown, 18 S. W. Rep., 670; Carrier v. Railway Co., 74 S. W. Rep., 1002; De La Pena v. International & G. N. Ry. Co., 32 Texas Civ. App., 241; Dugan v. Railway Co., 72 S. W. Rep., 291; Wencker v. Railway Co., 70 S. W. Rep., 145; Missouri P. Ry. Co. v. Porter, 11 S. W. Rep., 324; Gulf C. & S. F. Ry. Co. v. York, 12 S. W. Rep., 68; St. Louis & S. F. Ry. Co. v. Herren, 26 S. W. Rep., 425; Early v. Railway Co., 72 S. W. Rep., 348; Louisville & N. Ry. Co. v. Vittitoe, 41 S. W. Rep., 269; Tucker v. International & G. N. Ry. Co., 67 S. W. Rep., 914; New York, N. H. & H. Ry. Co. v. Kelly, 93 Fed. Rep., 745; Sheehan v. Railway Co., 76 Fed. Rep., 201; Kansas City, etc., Ry. Co. v. Cook, 66 Fed. Rep., 115; Stedham's Admr. v. C. & O. Ry. Co., 64 S. W. Rep., 560; Chesapeake & O. Ry. Co. v. See, 72 S. W. Rep., 252; Gregory v. Railway Co., 79 S. W. Rep., 238; Kirtley v. Railway Co., 65 Fed. Rep., 386; Louisville & N. Ry. Co. v. McClish, 115 Fed. Rep., 268; Pennsylvania Ry. Co. v. Martin, 111 Fed. Rep., 586.

*Stevenson & Ritchie* and *D. M. Alexander,* for defendant in error.—

Plaintiff's sons being licensees were not trespassers, and their going upon the track was not contributory negligence, therefore the first requested charge was properly refused. Shoemaker v. Railway Co., 29 Texas Civ. App., 578; Texas & P. Ry. Co. v. Phillips, 37 S. W. Rep., 621; Law v. Railway Co., 67 S. W. Rep., 1025; Texas & P. Ry. Co. v. Watkins, 88 Texas, 23; Washington v. Railway Co., 90 Texas, 320; Texas & P. Ry. Co. v. Roberts, 45 S. W. Rep., 218.

Plaintiff's sons being licensees were therefore not trespassers, and it was the duty of the agents in charge of the train to use ordinary care to discover them on the track. Shoemaker v. Railway Co., 29 Texas Civ. App., 578, and authorities under previous proposition, also, Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Galveston City Ry. Co. v. Hewitt, 67 Texas, 473; Shifflet v. Railway Co., 18 Texas Civ. App., 57; Houston & T. C. Ry. Co. v. Harvin, 54 S. W. Rep., 629; Gulf C. & S. F. Ry. Co. v. Smith, 87 Texas, 357; St. Louis & T. Ry. Co. v. Crosnoe, 72 Texas, 84.

Where there is any evidence supporting an issue or where the evidence is conflicting upon an issue, the court must submit it to the jury. Rev. Stats., art. 1317; Shoemaker v. Railway Co., 29 Texas Civ. App., 578, and authorities cited; Gulf C. & S. F. Ry. Co. v. Wagley, 15 Texas Civ. App., 313; Taylor v. Flint, 24 Texas Civ. App., 394; Stooksbury v. Swan, 85 Texas, 573; Shifflet v. Railway Co., 18 Texas Civ. App., 57; Lee v. Railway Co., 89 Texas, 588; Choate v. Railway Co., 90 Texas, 88; Grand T. Ry. Co. v. Ives, 144 U. S., 417.

Where the evidence tended to show that the boys were licensees, and also that the engineer was unfit by reason of defective eyesight, which unfitness was known to the company, or could have been known by ordinary care, it became a question for the jury and this peremptory charge was properly refused. Rev. Stats., art. 3017; Shoemaker v. Railway Co., 29 Texas Civ. App., 578.

WILLIAMS, Associate Justice.—The defendants in error recovered the judgment under examination for damages for the deaths of Charles and Fred Shoemaker, sons of defendant in error, who were killed by a train of plaintiff in error on the night of June 4, 1900.

The question upon which our decision depends is whether or not the evidence adduced at the trial in support of plaintiffs' action was legally sufficient to warrant the submission of the case to a jury. There have been two trials in the District Court. At the first a verdict for defendant was directed and returned, which action was reversed by the Court of Civil Appeals, the majority holding that there was evidence to go to the jury and Mr. Justice Stephens dissenting. At the last trial the submission of the questions involved to a jury resulted in a verdict and judgment for plaintiffs which was affirmed by the Court of Civil Appeals, Mr. Justice Stephens being still inclined to the opinion that the evidence was insufficient but assenting to an affirmance in deference to the former judgment of the court in obedience to which the district

judge had acted. The question is before this court for the first time. The evidence is wholly circumstantial. The plaintiffs, with their two sons, lived in an inclosure consisting partly of pasture and partly of cultivated lands, through which defendant's railroad ran from northeast to southwest. The field was north and the residence was south of and about two hundred and fifty or three hundred yards from the track. The track was fenced throughout the inclosure, but a private wagon road extended northwardly from the house, passed through the fences, crossed the track and curved westwardly through the field. This was used by the family in carrying wagons and horses to and fro. They had been accustomed, when on foot, to take a shorter route, going through the fences and across the track west of the wagon road, and in this way a foot path had been worn which ran westwardly for some distance from the house and divided into two branches, one of which turned northwardly crossing the railroad and intersecting the wagon road at one point, while the other continued in a westwardly direction and crossed the railroad and converged with the wagon road at other points further west. Just east of the inclosure neighborhood roads, much traveled, converged and crossed the track where there was a crossing. The railroad runs through a cut in the inclosure upon a grade descending to the west. Millsap, a station on defendant's road, is two and a half or three miles west or southwest, and a church a short distance east or northeast of the inclosure. People in considerable numbers had been for years in the habit of walking, day and night, upon the railroad track going to and from these points to church, to school and about other business or pleasure. The evidence shows that this had been observed by employes of defendant, such as section-men, trainmen and roadmaster, and none of the witnesses had heard of any objection being raised. For some time before the accident members of the Shoemaker family, including Fred and Charles, had been ill with measles, and the hearing of the two boys had been to some, but not a great extent, impaired. Members of the family had also lost sleep in waiting upon the sick. During the afternoon of June 4, 1900, a brother-in-law, whose health was precarious, went to Millsap and remained away so long that the family became uneasy about him and Fred and Charles went in search of him, Fred taking the wagon road and Charles the footpath going towards the railroad. The time of their leaving, by a watch which was not reliable, was noted to be 10:10 p. m. They were never afterwards seen alive. Their mangled remains were found next morning and near the railroad track, between the points where it was crossed by the two footpaths and about 250 or 300 yards from the house. The body of Fred was on the track between the rails, crushed into a shapeless mass. There were evidences to the east of the two bodies having been dragged along the track. The trunk of Charles, with head, both feet and an arm off, was found lying at the ends of the ties on the south side of the dump forty to sixty yards west of Fred's remains and about twenty feet east of the most westerly footpath. Fragments of

bodies, shoes, etc., were found between the two bodies and other parts were found further west. A piece of cloth from the trousers of one of the boys was found at a point some seven miles west of this place. The shoes found were all torn except one, which sat on the outside of the rail and appeared to one of the witnesses as if it had been "pulled off and set down." It fastened with a buckle and had been unfastened and was uninjured. Its position seems from the record to have been between the two bodies.

The trains which were scheduled to pass this point between the times of the disappearance of the deceased and the discovery of their bodies, were as follows, taking the time of their arrivals at Millsap: No. 92, east bound, 10:45 p. m., No. 5, passenger, west bound, about 11:00 p. m., first No. 13, west bound, 1:30 a. m., second No. 13, west bound, 5:40 a. m., and No. 6, east bound, 5:15 a. m. No. 5 is shown to have been on time that night, and some of the evidence indicates that No. 92 passed east after the boys left the house. As to the others the record is silent. The conclusion from this is that other trains besides the one that struck the boys probably passed over one or both of their bodies, rendering it utterly impossible to know their position when they were first struck. The plaintiffs' theory is that the boys were killed by No. 5, the fast passenger, or "cannon-ball train" as it is called by the witnesses; and a witness testified that on the night of the killing he observed blood upon the pilot of the engine of that train at a point several miles west of Millsap. It appears that on the 5th, after the accident, the foreman of the defendant's shops at Fort Worth received a message from Big Springs, 180 miles west of Fort Worth, that some parties had been killed, and he examined all of the engines going east that day and found no evidence on them. The engine of train No. 5 did not return until the 6th and was not examined. The plaintiffs claim that the engineer on this train, one Waldron, was unfit for his position by reason of a defect in his sight which would interfere with the discovery of objects on the track. Evidence tending to show that his sight was impaired was introduced by the plaintiffs and defendant produced rebutting evidence. If it were necessary to decide whether or not this evidence, when all of it is considered, really went to the extent of showing such an impairment of vision as to justify the inference intended, namely, that the engineer was incapacitated to keep a proper lookout, we should find difficulty in reaching an affirmative answer; but we may concede this point to the plaintiffs. The evidence further shows that the railroad track for a long distance east of the point of the accident is straight and unobstructed and that on the night in question the moon was shining brightly; that no signal was given by those operating the passenger train for the road crossing just outside of plaintiffs' inclosure; that the train moved rapidly down the grade with the steam shut off and making little noise as compared to that commonly made by a train using steam. This was the manner in which it ordinarily passed that point and the evidence discloses nothing unusual in its

management. It further appears that the boys were 18 and 19 years of age respectively; that they had worked upon the railroad, were accustomed to walk upon this track, and the evidence justifies no other inference but that they knew of the constant passing of trains and of the time when this train was due at that point.

The question to be decided is whether or not from these circumstances the jury were authorized to infer the facts from which the liability of the defendant would result. The two leading facts were, first, that the defendant or its servants were guilty of some act or omission which, if injury resulted therefrom, would constitute actionable negligence; and second, that such act or omission proximately caused the deaths for which the suit is brought.

We have assumed, for present purposes, that there may have been such unfitness in the engineer of No. 5 as to show that the defendant was negligent in retaining him in such a position, and we shall likewise assume that the crossing outside of plaintiffs' inclosure was such as to require the giving of statutory signals. We are of the opinion that the jury could properly have found that the boys were killed by the passenger train; so that, if the evidence warranted the conclusion that the unfitness of the engineer, or the failure to give the signals, was the proximate cause of the deaths, the court was right in submitting it to the jury, unless contributory negligence on the part of the boys affirmatively appears. But upon this question of proximate cause, in our opinion, the case hopelessly fails. No one can say from the evidence that the boys were at the crossing or that the failure to give the signals had anything to do with the deaths. So far as any inference can be drawn from the appearances stated, it is that they were upon the track and away from the crossing. The specific duty to give the signals was to those using the crossings and not to persons at other places. The absence of such signals may sometimes affect the conduct of persons on the track at other places than crossings, and so it might, if all the facts were known, affect the question of contributory negligence here; but, by itself, it constitutes no breach of any duty to the boys, so far as can be seen from the evidence. The unfitness of the engineer only affects the question as to whether or not a proper watch was kept along the track. The presumption is that there was, and it will hardly do to say that it is overcome by mere proof of the unexplained killing and of the engineer's defective vision. There was also a fireman on the engine who, for aught that appears, could have performed this duty so far as it affected the deceased. But, aside from this, the failure to keep a proper lookout, either from incapacity or other reason, could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the unfortunate occurrence, and no inference of this fact can be drawn from the evidence. What were the boys doing as the train approached them? How long were they on the track before they were struck? What was their position? An answer to these questions must be found before it can be said that there was a

failure to keep a proper lookout, and that such a lookout would have discovered them in danger in time to have enabled those controlling the train to have saved them; and for such answer the evidence may be searched in vain. This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself. Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Texas & N. O. Ry. Co. v. Crowder, 63 Texas, 505. Our reference to the last case makes it proper for us to say that there is no presumption that the deceased were guilty of contributory negligence, and that the burden of proof was not upon plaintiffs to show that the deceased were not so guilty. But neither is there a presumption that the defendant was guilty of negligence which caused their deaths. The facts of the case are, however, at least as suggestive of negligence on their part contributing to their deaths as they are of such negligence on the part of the servants. The trouble about the evidence is that it merely reveals an unfortunate and deplorable occurrence without enabling us to see what each of the parties contributed towards bringing it about, and leaves the case very much in the same attitude as those cited.

It is urged that the defendant should have produced the evidence of those on the engine to explain their connection with the tragedy. It appears that the engineer died before the first trial but some time after the suit was brought, and that the fireman is still living and in the service of the defendant. The manner in which their train passed the point of the accident and proceeded on its way indicates strongly that those on the engine did not know of the occurrence. Galveston City Ry. Co. v. Hewitt, 67 Texas, 476. A defendant can not be called on to produce evidence where the plaintiff has failed to bring sufficient proof to prima facie sustain his cause of action. 2 Wharton on Evidence, sec. 1268. In the case relied on in this connection (Galveston City Ry. Co. v. Hewitt, 67 Texas, 482), a child was shown to have been upon a street railway in front of an approaching mule car under such circumstances that the driver ought apparently to have seen it in time to have avoided running over it. In other words, the evidence warranted the inference of negligence in the failure to see the child, and it was with reference to this that Judge Stayton made the remark quoted by counsel as to the duty of the defendant to call the driver as a witness to explain the occurrence more fully. The difference is that in this case the evidence shows nothing of the situations and conduct of the parties immediately leading to the casualty. If the fireman's testimony would have made out a case for the plaintiffs when they could produce no other, they should have called him. Galveston H. & S. A. Ry. Co. v. Faber, 77 Texas, 155.

We have, so far, not discussed the contention as to the negligence in the speed of the train, because we are of the opinion that no such running is shown as, in connection with the place of the accident and the circumstances surrounding it, evidences negligence. 4 Elliott on Rail-

roads, sec. 1589. Besides the plaintiffs labor under the same difficulty in this which we hold to be fatal to their recovery on other grounds of negligence, that they are unable to adduce any evidence that the rate of speed was the proximate cause of the deaths.

The views expressed render it unnecessary to consider the question as to whether or not the facts show affirmatively a prima facie case of contributory negligence on the part of the deceased. The evidence being legally insufficient to authorize a recovery of plaintiffs, the judgments will be reversed and judgment rendered for the defendant.

*Reversed and rendered.*