Texas Central Railroad Company v. Martha Randal.

Decided January 25, 1908.

**Railroads—Killing Live Stock at Public Crossing—Evidence.**

In a suit for the value of a horse alleged to have been killed by a railroad train through the negligence of the defendant company at a public crossing within the corporate limits of a town, evidence considered, and held insufficient to show negligence on the part of the defendant, or that defendant's negligence, if any, was the proximate cause of the killing.

Appeal from the County Court of Bosque County. Tried below before Hon. P. S. Hale.

*J. A. Kibler* and *Cureton & Cureton,* for appellant.

No brief for appellee.

CONNER, CHIEF JUSTICE.—In the County Court of Bosque County on appeal from a Justice's Court appellee recovered a judgment of two hundred dollars as damages for the alleged negligent killing of one of her horses by one of appellant's passenger trains on the 5th day of April, 1906. The horse was struck and fatally injured at a public crossing about one mile west of the town of Morgan. The negligence alleged was a failure to ring the bell or blow the whistle for the crossing; negligent running at a high rate of speed through the incorporated town and over the crossing; a

failure to keep a proper lookout for stock on or near the track; and in not using proper efforts to avoid striking the horse after observing him.

Error is assigned to the court's refusal to give a requested peremptory instruction to find for the defendant, and the material question presented on this appeal is whether the evidence sustained the verdict and judgment. The case has not been briefed in behalf of the appellee, and we therefore have not been favored with her view of the case, but we have read the evidence as set out in behalf of the appellant in its brief, and also as set forth in the transcript on appeal, and if there be any phase of the evidence showing that the death of appellee's horse was the proximate result of negligence on appellant's part, we have been unable to find it.

Briefly stated, the evidence shows that some time between sundown and dark on April 5, 1906, appellant's westbound passenger train proceeded from the depot at Morgan at not in excess of its usual scheduled speed until after passing over the crossing in question, which was about one mile west of the depot in Morgan but within its incorporated limits. The evidence further shows that the road was fenced on either side of the crossing and that about the time the train left the depot appellee's horse with several others was grazing in an open glade several hundred feet south of the crossing; that as usual the engineer whistled for the crossing; that neither the engineer nor fireman noticed any horses on or near the track; that soon after the train passed over the crossing the bunch of horses noticed on the south side of the railway track appeared running along the road on the north side, but the evidence fails to show with certainty whether the horses crossed before the train arrived at the crossing or afterwards; it rather tends to show, however, that the horses crossed behind the train; no one saw the train strike appellee's horse, but it was found later in the night a short distance north of the track with a deep wound extending from about the base of the brain across the neck to a point behind the horse's jaw, and with another wound on the point of the left shoulder extending back to the stifle joint, with what some of the witnesses designated as "car grease" appearing on the shoulder and side. An examination of the engine and cars on the following day disclosed that there was no evidence of a collision with the engine, but the mail crane, situated on the mail car, had blood and animal hair upon it and was bent backward out of its usual position, and blood spots were found upon the boards which formed the south approach to the crossing. Small scratched places were also found on the sides of the mail car to which the crane was fastened. The mail clerk testified to the effect that as his car passed the crossing he heard an unusual noise and went to the door of the car to see if he could ascertain the cause, but was unable to do so because it was dark at the time and he could not see what it was. There was evidence that from the depot at Morgan to the crossing the track was level and the view open and unobstructed, but we find nothing whatever in the evidence tending to show that the operatives of the engine saw the animals on the south side of the track, or

if they were negligent in failing to so observe them, that such negligence was the proximate cause of the injury to the horse.

If the evidence shows that appellant's train killed appellee's horse at all, it indicates that the horse collided with the mail car after the locomotive had passed beyond. Just how this occurred can only be conjectured. The bunch of horses may have been suddenly frightened by the whistle for the crossing or the noise of the approaching train, and in attempting to cross appellee's horse ran against the car. But if so, nothing in the evidence tends to show that the speed of the train or the blowing of the whistle constituted negligence which caused the result. The killing, if any, having occurred at a place where appellant was not required to fence its track, appellee was required to show by a preponderance of the evidence not only that her horse was injured by appellant's train, but also that the injuries were brought about or proximately caused by negligence as alleged. This, as stated, appellee wholly failed to do. See Gulf, C. & S. F. Ry. Co. v. Anson, 105 S. W. Rep., 989; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; Missouri, K. & T. Ry. Co. of Texas v. Baker, 90 S. W. Rep., 869.

We conclude upon the authority of the cases cited that the court erred in refusing to give the peremptory instruction as requested, and that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*