Nettie Coffman v. Texas Midland Railroad.

Decided February 26, 1910.

</div>

**1.—Negligence—Death—Causal Connection—Insufficient Evidence.**

In a suit by a surviving widow against a railroad company for the death of her husband, it was shown by the evidence that deceased alighted at one of defendant's stations on a dark night for the purpose of going to the house of a relative about 150 yards distant; he was afterwards found in an uncon-

scious condition lying at the bottom of a gully or gulch and near the railroad bridge that crossed the same in the direction of the relative's house; he died next morning without explaining how he came to fall in the gully, and there was no evidence explaining the occurrence. Held, the facts that there were nails extending from some of the planks of the bridge, and that the bottom of one of deceased's shoes was torn, together with other facts above stated, were not sufficient to warrant the jury in inferring that the deceased was walking over the bridge and struck his shoe against a nail projecting therefrom and was caused to fall from the bridge, and the court properly instructed a verdict for defendant.

**2.—Same.**

The causal connection between a negligent act or omission and an injury must be proved; it can not be presumed.

Appeal from the District Court of Kaufman County.  Tried below before Hon. F. L. Hawkins.

*J. S. Woods* and *Thos. R. Bond,* for appellant.—Under the rule of *res ipsa loquitur* the facts proven on the trial hereof by plaintiff, without explanation on the part of the defendant, authorized the question of plaintiff's right of recovery herein to be submitted to the jury for its determination. Missouri Pac. Ry. Co. v. Bridges, 74 Texas, 520; St. Louis S. W. Ry. Co. v. Smith, 49 Texas Civ. App., 1; Missouri, K. & T. Ry. Co. v. Hollan, 49 Texas Civ. App., 55; St. Louis S. W. Ry. Co. v. Hawkins, 49 Texas Civ. App., 545; Strange v. Bodcaw Lumber Co., 96 S. W., 152.

*Res ipsa loquitur,* rule of: 29 Cyc., 5928 and 623; Arkansas Tel. Co. v. Ratteree, 57 Ark., 429; Wood v. Wilmington City Ry. Co., 64 Atl., 246; Connor v. General Fire Extinguisher Co., 73 N. Y. App., 624; Kaples v. Orth, 61 Wis., 531; Leeright v. Ahrens, 60 Mo. App., 118.

The fact of the negligent maintenance of a dangerous and unsafe bridge for the use of pedestrians by a railway company in the middle of a street in a populous city, being established by evidence beyond dispute, the fact that deceased came to his death from said cause may be established by circumstantial evidence. Gulf, C. & S. F. Ry. Co. v. Hewett, 67 Texas, 473; Boehrens v. Brice, 52 Texas Civ. App., 221; Bonn v. Galveston, H. & S. A. Ry. Co., 82 S. W., 808; Hopkins v. Boyd, 18 Ind. App., 63; Leeright v. Ahrens, 60 Mo. App., 118; Hart v. Hudson River Bridge Co., 80 N. Y., 622; Reiley v. Atlas Iron Works, 83 Hun, 196; Basbeck v. Philadelphia Co., 31 Am. St., 563; Woodall v. Boston Elevated Ry. Co., 192 Mass., 308; Strange v. Bodcaw Lumber Co., 96 S. W., 152.

*A. H. Dashiell* and *Ogden, Brooks & Napier,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This was a suit by appellant against the appellee to recover damages for the death of her husband, Dr. J. A. Coffman. At the close of the testimony in chief for plaintiff the defendant requested the court to instruct a verdict for defendant, which request was granted, and the jury, in accordance with such instruction, returned a verdict for defendant and judgment was so en-

tered. Plaintiff's motion for new trial having been overruled, she perfected an appeal.

The evidence showed that Dr. Coffman, the deceased, left Big Springs, in Howard County, on the morning of January 18, 1906, on the train over the Texas & Pacific Railroad for Terrell, and arrived in Terrell about nine o'clock that night. He got off the train at the Union Depot of defendant and the Texas Pacific Railway in Terrell about nine o'clock at night. The night was dark. He lived about eight miles north of Terrell, and had a relative living about one hundred and fifty yards north of the depot where he got off and on the east side of Callie Street. He was next seen by the witness, Art Carden, who testified: "I was traveling High Street, going east, coming home, and I heard a groaning, and went down to where it was and found Dr. Coffman in this gulch or ravine under the Texas Midland Railroad bridge, on the east side, lying about three feet from a perpendicular line up and down from the bridge. The gully must be twelve or fifteen feet deep—twelve feet, I will say." He further testified on cross-examination: "I was the first person to Dr. Coffman. No one was with him when I got there." Dr. Coffman was removed from the gully and taken to the home of his relative only a short distance away, where he died the next morning. The evidence does not disclose the whereabouts of Dr. Coffman or what he was doing from the time the witness McCloud saw him alight from the train at the depot until Carden discovered him in the gulch or ravine. Dr. Neely testified that the physician thought his shoulder was broken, but did not know positively, because he was in such a condition that they did not deem it advisable to make an examination. Dr. Davis testified that his shoulder was broken. He thought the injuries were produced by considerable force. He says: "Well, it was a considerable lick of some kind; there was considerable force in the injury." Mr. Dean testified that he saw Dr. Coffman after his death and did not remember but one bruise, and that was on his breast; the best of his recollection, it was on the left breast. The evidence fails to show how Dr. Coffman came to be where Art Carden found him, or in what way he received his injuries. He may have been murdered. He may have jumped off the bridge. He may have been knocked off. He may have been—and probably was—walking along Callie Street along the side of the railroad, and have fallen in the gulch. The proof shows that he was three feet north of the bridge, and it is also undisputed that this gully or gulch at this point was ten or fifteen feet wide and twelve to fifteen feet deep, and that the only way it could be crossed was over the railroad bridge.

The facts are quite similar to those passed upon by the Court of Appeals of New York in the case of Gardinier, Adm'r, v. New York Central Railway Company, reported in 9 N. E. Reporter, 182. In that case it was claimed that the railway company had failed to make its bridge safe for the public, and the complaint set out that the deceased, while attempting to go from Fonda to his home at Fultonville, and in attempting to approach and cross the bridge in the night-time, fell over the wing wall of the bridge and was killed. The court, in its opinion, says: "The evidence shows that he was found between

eleven and twelve o'clock of the night of that day, lying on the track under and near the bridge, badly hurt. The physician, who was soon in attendance, discovered slight superficial scalp wounds, no broken bones, but 'he was suffering from shock-concussion,' and from this cause soon after died. He was hardly able to make a sound, soon became unable to speak, and gave no explanation of the circumstances which led to his condition. The same witness testified that the injury was such as might have been caused by falling from the abutment of the bridge on the railroad track, or from a car, or by a blow, 'but the probability was, from the general condition of the man, that it was a fall.' . . . It is evident that the jury supplied an important but unproven fact by mere surmise, and not on inference. They assumed that the deceased was at the wing wall going towards, or was on, the bridge when the accident occurred. But of this there is no evidence. He was not seen at the bridge or upon it at its approaches. The record does not show that he was, during the evening, even going towards the bridge or his home, which lay beyond the bridge, or that he was intending to do so. There was literally no evidence to show how the deceased came to the place where he was found. We find, therefore, that the appellant's counsel is right in the assertion that there is no evidence that the deceased was 'on the bridge that night, or that he was seen going in that direction.' It could, therefore, only be conjectured that the intestate was upon the wall of the bridge, but there was no basis in the evidence to support the conclusion, and without that fact established the condition of the bridge becomes unimportant."

In the case now before us there is no evidence that Dr. Coffman was on the bridge. He made no explanation after being injured of the circumstances which led to his being in the gully where Art Carden found him. It is only a surmise that he was walking over the bridge and fell therefrom. As said in Texas & Pac. Railway v. Shoemaker, 98 Texas, 451, "This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself."

Appellant contends that the jury could infer from the facts that Dr. Coffman was walking over the bridge and struck his shoe against a nail projecting from a plank, and was thereby caused to fall therefrom. It was shown that he had a relative living a short distance north of the bridge, and the bridge was on the route from the depot to the home of said relative, and that there were nails extending from some of the planks of the bridge. It was shown that the bottom of one of deceased's shoes was torn. The jury could not, from these facts alone, infer that Dr. Coffman was walking over the bridge and struck his shoe against a nail projecting therefrom, and was caused to fall from the bridge, producing the injuries which resulted in his death. Under the facts the doctrine of *res ipsa loquitur* does not apply, as is contended by the appellant. We conclude that the court did not err in instructing a verdict for defendant.

The judgment is affirmed.

*Affirmed.*