RONSLEY et al. v. CITY OF FORT WORTH.

No. 14026.

Court of Civil Appeals of Texas.

Fort Worth.

April 12, 1940.

Rehearing Denied May 17, 1940.

H. S. Lattimore, of Fort Worth, for appellants.

R. E. Rouer, Geo. C. Kemble, R. B. Young, Jr., Frank Crumley, and S. Langford Carlton, all of Fort Worth, for appellee.

SPEER, Justice.

We previously rendered an opinion in this cause, in which we affirmed the judg-

ment of the trial court in sustaining a motion for judgment notwithstanding the verdict. In support of our conclusions, we discussed, among other things, an ordinance by the City of Fort Worth, which prohibited swimming in Lake Worth at certain places designated therein. We stated that swimming in the lake where deceased was injured was prohibited by the ordinance. That statement by us has been challenged by plaintiffs in the motion for rehearing.

The record indisputably shows that deceased was injured when he dived into the lake waters at Stamp's Park, located approximately three-quarters of a mile up-stream from the "Nine-mile Bridge". The ordinance in question is shown to have been based upon findings of the City Council, among other things, that theretofore indiscriminate bathing and swimming had been practiced by the public in the lake waters up-stream from the Nine-mile Bridge, where no adequate life-saving guards or special police protection had been maintained; that such matters constituted a menace to public health, morals and to the lives of those so using said waters. That the City of Fort Worth had established what is known as the Municipal Bathing Beach just south of the Nine-mile Bridge, where all necessary equipment had been provided for the protection of the public, using it. The ordinance then prohibits the use of said lake waters for swimming purposes (except under certain named conditions) up-stream from said bridge "to a point running with and parallel to the north line of the J. Wilcox Survey, No. 34, in Tarrant County, Texas, and extending from the west to the east shore line of said reservoir or Lake Worth."

We have again gone carefully through the narrative statement of facts before us, and find that it is well established by the testimony that Stamp's Park is on the lake shore up-stream from the Nine-mile Bridge, but it is nowhere disclosed where the north line of the J. Wilcox Survey No. 34 is located. For the purposes under consideration, it is sufficient to say that the prohibited area was between the bridge, up-stream to the Wilcox line mentioned. We find no evidence in the record which places Stamp's Park, where deceased was injured, between the bridge and the Wilcox Survey line. This being true, insofar as the record shows, we were in error when we stated in the original opinion that "swimming in the lake where deceased was injured, was prohibited by the ordinance."

Some things we said in the original opinion were based upon this erroneous statement by us and we deem it advisable to withdraw that opinion and re-write our conclusions as expressed herein, extending to all parties the privilege of filing motions for rehearing, if they so desire, under the same conditions as if no other opinion had been written.

This suit was instituted by Mrs. Clarence O. Ronsley, in her own behalf and as next friend for her young child, against defendant, City of Fort Worth, seeking to recover $42,400, as damages for the death of Clarence O. Ronsley, the deceased husband and father of the respective plaintiffs. The parties will bear the same designation here as in the trial court.

Plaintiffs' right of recovery was based upon acts of the defendant, alleged in the pleadings, to be negligence and the proximate cause of Mr. Ronsley's death. The petition charges that twenty or more years ago the defendant acquired several thousand acres of land situated on both sides of the West Fork of the Trinity River, cut and removed the timber therefrom, leaving stumps and other foreign substances on the land; built a dam downstream and caused the area to be flooded, thereby creating a reservoir known as Lake Worth. That defendant owned a narrow strip of land around the lake adjacent to the water line; that for many years, including 1937, when the injuries complained of took place, defendant had rented its lands next to the lake shore, for camp sites and recreational purposes. That about seven years before Mr. Ronsley was injured, the defendant had leased to one Stamps certain of its land adjacent to the lake shore, with the knowledge that it would be used for recreational purposes and the lake water would be used for swimming and bathing purposes; that during said time the land was improved by erecting bath houses to accommodate persons who desired to swim in the lake; that with said knowledge, the defendant renewed its annual lease contract with Stamps and his assignee during each of said years. It was alleged that on July 15th, 1937, Clarence O. Ronsley, accompanied by his wife and a few friends, went to Stamp's Park,

rented bathing suits and paid for checking their clothes during the time they expected to be in the water, in anticipation of swimming in the lake waters adjacent to the camp or park site. That Mr. Ronsley dived into the water and struck his head against a stump or some other foreign object just beneath the surface of the water, with the result that his neck was broken, from which his death ensued.

The alleged acts of negligence by defendant upon which recovery was sought were, leasing by defendant to Stamps and his assignee the premises for a bathing beach; allowing the lessees to use the premises as a bathing beach; in permitting stumps and other foreign objects to remain in the water beneath its surface at that place, where it was being used for bathing and swimming purposes, and for not placing signs or markers at such dangerous places, to warn the public of such latent dangers, while using the waters for bathing purposes. It was alleged that these acts were negligence and proximately caused the injuries to Mr. Ronsley, and the consequent damages sought by plaintiffs.

Aside from the general denial, defendant answered with special pleas denying that it ever leased the premises to Stamps or renewed such lease with his assignees, to be used as a bathing beach and denied that it was negligent in not forbidding the use of said premises for bathing purposes. It specially denied that deceased met his death by striking his head against a stump or other foreign object at the time and place complained of by plaintiffs, alleging that there were no stumps or foreign objects in the water at the time and place which could not be seen from the shore. Defendant further answered that Clarence O. Ronsley was injured as a proximate result of his own negligence; that at the time and place where he was injured there were numerous women and children standing and wading in the waters in that immediate vicinity from which any one could observe that the water was shallow, but that without keeping a proper lookout for his own safety, Ronsley dived into the water at a place where it was only a few inches deep and thereby received his injuries; that if he had exercised any degree of care for his own safety, he would have observed from persons in the water that it was dangerous to attempt to dive therein from shore, as was done by him, and that his own negligence was the proximate cause of the injuries sustained.

As a further defense, the defendant plead the existence of an ordinance passed by the City Council, which is the document hereinabove referred to in this opinion. The defendant sought to establish contributory negligence on the part of C. O. Ronsley, proximately causing his death, on account of his acts being in violation of the ordinance, but, as above stated, since it was not shown by the evidence that Stamp's Park was within the area described in the ordinance, a discussion of the ordinance and its effect is not required of us.

After the evidence was all in and before the charge of the court was presented to the jury, defendant moved for an instructed verdict; this was denied by the court.

In response to special issues submitted, the verdict was, in effect, (1) there was a submerged stump at the point where Ronsley was killed; (2) The submerged stump created a dangerous condition to bathers; (3) the dangerous condition there was known, or by the use of reasonable diligence should have been known, to the authorities of the City of Fort Worth; (4) Ronsley's death was caused by his head striking a submerged stump; (5) Ronsley was not guilty of negligence in diving into the water at the time, place and manner that he did dive into it; and (6) Ronsley was not guilty of negligence in failing to ascertain, just prior to the time he dived into the water, whether or not it was sufficiently deep to permit diving.

After the verdict was returned, defendant timely filed its motion for judgment non obstante veredicto. No complaint is made of the sufficiency of the motion, the notice or the form of the judgment rendered thereon. They meet the requisites of procedure laid down by the Supreme Court in Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970. The motion was sustained by the court, and judgment was entered accordingly. Motion for new trial being overruled, plaintiffs have perfected this appeal.

The sixteen assignments of error urged by plaintiffs present as many alleged reasons why the court committed reversible

error in sustaining the motion for judgment notwithstanding the verdict.

Article 2211, R.C.S. Vernon's Ann.Civ.St. art. 2211, provides: "The judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. * * *"

The evidence shows that the reservoir is the property of defendant and is within its corporate limits; that defendant had prepared a place on the lake for public swimming purposes, known as Municipal Beach, which was adequately provided with life-guards, life saving devices, police protection and equipment for sanitary purposes; that defendant had leased its strip of land around the lake, in small areas, to individuals for camp sites and recreational purposes, over a period of several years; that the place known as Stamp's Park consisted in part of an area about fifty · feet wide and extended from the water's edge out to defendant's property line, and had been leased each year by the defendant under a written contract. Among other provisions in the lease contract made in 1930, and renewed each year up to and including the date of the accident, it recited that, "No bathing in Lake Worth shall be permitted or allowed under this contract, except at Bathing Beach." There was evidence showing that at all times during the life of those several renewals of the contract, the lake waters adjacent to the premises were used in season by patrons of the lessee for bathing purposes, and that the Lake Police Patrols, employees of the defendant, knew of such uses. The foregoing may be said to be the uncontroverted facts established. The testimony concerning other matters determined by the verdict is highly conflicting. Such as, that Ronsley hit a stump when he dived into the water; he was fully conscious when taken out of the water and said that he hit something, which he thought was a stump; he likewise said within the next few minutes ·that he did not strike a stump, but his wife testified

the latter statement was made by him because she was crying. Mrs. Ronsley said he had a large knot on his head the next day after the accident; Mr. Eddleman, who waded out in the water about knee deep and picked up Ronsley, said he struck something with his foot and later touched it with his elbow when he picked up the injured man; he took the object to be a submerged stump. The witness Walker, lessee of the premises, said when he arrived they had removed Ronsley from the water and had him on a table; that Ronsley told him he did not hit a stump but hit the ground; that Ronsley had sand on his head; witness had frequently examined the water and Lake bottom at the place where deceased dived in and said there was no stump anywhere near the place; that he examined it both before· and after the accident. Mrs. Crow testified that she was present when they took Ronsley out of the water; he had sand on his head and face; there were no cuts or bruises on his head; she had been in the water frequently where Ronsley was injured, both before· and since, and that there was no stump or root on the bottom there at that time. Mrs. Harris' testimony was to the same effect. As bearing on the issues of whether or not Mr. Ronsley was guilty of negligence proximately causing his injuries at the time and place when he dived into the water, in which answers the jury acquitted him of negligence, the evidence shows that it was about 7:30 o'clock P. M. but the lights were on over the water; he had never visited the place before; the depth of the water ranged from six inches at the edge and grew gradually deeper further out; he dived from a board on the root of a tree and his head struck the water perhaps fifteen feet from the water line; the water was about knee deep to the man five feet nine inches tall, at the point where the injured man's head was; several women and children were wading farther. out than where his head struck; the water came above the knees of those that were in the water; there was a dock or board walk about fifty feet south of where the accident happened, extending out some distance; there was a board platform out in the water from where Ronsley dived in, located about the same distance from shore as the end of the board walk to the south.

██ We find it is unnecessary for us to determine if there was more than a

scintilla of evidence to support the verdict which acquitted the injured man of negligence, or whether he was guilty of negligence as a matter of law proximately causing his injuries, under all the facts and circumstances. However, if the trial court, by entering judgment for defendant, thereby found that there was no support in the evidence for the verdict on these points, under Article 2211, supra, he had a right to disregard those jury findings. The motion of defendant for judgment non obstante veredicto raised the question.

Among the various points presented in the motion by defendant, paragraph number six reads: "There is no causation in the case, in that the injuries complained about did not result from any act flowing in a natural and continuous sequence to the event that occurred." Paragraph seven reads: "The accident was not foreseeable, in that the defendant was not maintaining or operating a bathing beach at the point or in the vicinity of the point where Clarence O. Ronsley was injured and it was guilty of no act of omission or commission that in any way resulted in his injuries, and it could not have reasonably foreseen or anticipated that Clarence O. Ronsley or any one else would have been injured in the manner in which he was injured." Paragraph ten reads: "The record conclusively shows as a matter of law that the injuries suffered by Clarence O. Ronsley were the result of his own contributory negligence, in that he ran down the bank of the lake and dived in without making any investigation as to the depth of the water or any facts as to the nature of the place where he was diving and his neck was broken, consequently bringing about his death."

We cannot know from the record before us whether or not the trial court found that there was no evidence to support that part of the verdict, and therefore disregarded it. It is unnecessary for us to pass upon that phase of the case, and for that reason we express no opinion on it.

■ Before plaintiffs could recover in this case, it was necessary for them to prove by competent evidence that some alleged act or acts of defendant constituted negligence, as that term was defined by the court in his charge, and that such negligence proximately caused the injury. Such facts may be shown by circumstances disclosed by the evidence. In such cases as this, whether or not the proven acts or omissions of a defendant constitute negligence and proximate cause, are fact questions and when a jury is demanded, as in this case, the issue becomes one for its determination. It was not only plaintiffs' burden to establish acts of defendant, either of commission or omission, but that they constituted negligence and proximate cause, before they could recover. The fact of causal connection between an alleged negligent act and an injury can no more be presumed than the act or omission itself. Texas & N. O. R. Co. v. Zarate, Tex.Civ.App., 74 S.W.2d 721, writ refused; Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Houston E. & W. T. Ry. Co. v. McHowell, Tex.Civ.App., 278 S. W. 258, writ dismissed.

■ In negligence cases there is no difference in the application of the rule of proximate cause to the negligent acts of defendant and those of the plaintiff. Dallas Ry Co. v. Eaton, Tex.Civ.App., 222 S.W. 318, writ dismissed.

In Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363, 364, court held: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection between the negligence and the injury." The above rule was followed in an opinion by the Commission of Appeals, in St. Louis B. & M. Ry. Co. v. Price, 269 S.W. 422, at page 428, adopted by the Supreme Court.

■ The verdict of the jury which finds that there was a submerged stump where Ronsley was injured, that it created a dangerous condition for bathers, that the defendant knew, or by reasonable diligence should have known it, and that Ronsley was injured by striking his head against a stump, does not establish negligence by defendant as a matter of law, nor that if such acts and omissions did constitute negligence, that they were the proximate cause of the injuries sustained.

■ Recovery by plaintiffs in this case could only be sustained by a favorable verdict on the ultimate and controlling issue in their alleged cause of action.

262

That complete ultimate issue was made up of four component or subsidiary issues, they being, (1) the fact of the alleged wrongful acts of defendant, (2) whether they be negligence, (3) whether such negligence be the proximate cause of the injury, and (4) the amount of damages. When, as in this case, one or more of those component elements of the ultimate issue is submitted and answered, and others are not submitted or requested to be submitted, those subsidiary or component elements of the ultimate issue not submitted or requested to be submitted are not waived, and the court may find, and is deemed to have found, them, under Article 2190, R.C.S. Vernon's Ann.Civ.St. art. 2190, in such way as to support the judgment rendered by him. North v. Atlas Brick Co., Tex.Com.App., 13 S. W.2d 59, approved by the Supreme Court. The latest expression of the Supreme Court on this subject is Wichita Falls & O. Ry. Co. v. Pepper, 135 S.W.2d 79. In that opinion the North v. Atlas Brick Co. case, supra, is again cited with approval. Bearing directly on the point also are the cases of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084, and Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031.

The court submitted in this case certain elements of plaintiffs' ultimate issue upon which they sought a recovery: i. e., whether or not defendants did the acts complained of in the petition and the amount plaintiffs were entitled to recover; omitting the other component elements of the issue of whether the acts found by the verdict constituted negligence and proximately caused the injuries. No request by plaintiffs was made for the submission of those issues and no complaint is made here by them because they were not submitted. The failure of the court to submit those issues cannot be imputed to defendant. Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902; Wichita F. & O. Ry. Co. v. Pepper, supra.

For reasons best known to the trial court for not having submitted those elements of the ultimate issue, and to plaintiffs for not having requested their submission, they were omitted. No recovery could be had by plaintiffs unless the acts shown constituted negligence and proximate cause as a matter of law, or if not, then a finding of fact thereon by the jury. We have concluded, as above indicated, that negligence and proximate cause were not shown as a matter of law. The court entered judgment for defendant, and under the authorities above cited, he is deemed to have found those essential and component elements of the ultimate issue in such a way as to support the judgment entered.

For the reasons stated and under the authorities cited, we conclude and so hold that no error is shown to have been committed by the court in the matters discussed, and that the judgment should be affirmed. It is so ordered.