### MRS. M. ENGLISH ET AL. v. INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY.

#### Decided December 12, 1906.

**Negligence—Accident—No Causal Connection—Instructed Verdict.**

When the undisputed testimony showed that the apron and drawer–bar between the engine and the tender were in a defective condition, but there was no evidence to show any causal connection between the negligence of the defendant in the matter of the apron and drawer–bar and the fall of the deceased from the engine, the court properly instructed a verdict for defendant. Presumptions and inferences will not be indulged against evidence.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Earl D. Scott* and *Carlos Bee,* for appellants.—When there are issues in a trial which involve questions of cause and effect, the question as to whether or not there has been negligence, and whether or not such negligence has resulted in or contributed to an injury, such questions are peculiarly and exclusively for the determination of the jury, to be passed on by them after a consideration of all the facts and circumstances, and inferences therefrom, in evidence before them; and where such questions of fact are involved, it is error for the trial court to determine them, and to withdraw them from the consideration of the jury by a peremptory instruction. Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 88; Shiflet, et ux, v. St. Louis S. W. Ry. Co., 44 S. W. Rep., 919; Southern Pacific Co. v. Winton, 66 S. W. Rep., 477; Ft. Worth & R. G. Ry. Co. v. Kime, 51 S. W. Rep., 558; San Antonio & A. P. v. Waller, 65 S. W. Rep., 211; McCray v. Galveston, H. & S. A., 89 Texas, 168; Galveston, H. & S. A. Ry. Co. v. Horne, 69 Texas, 648; Pullman Co. v. Nelson, 22 Texas Civ. App., 227; Lamberida v. Barnum, 14 Texas Ct. Rep., 434; Gulf, C. & S. F. Ry. Co. v. Mathews, 13 Texas Ct. Rep., 949; Bonn v. Galveston, H. & S. A. Ry. Co., 82 S. W. Rep., 808; Gaunce v. Gulf, C. & S. R. Ry. Co., 48 S. W. Rep., 525; Texas & P. Ry. Co. v. Murphy, 46 Texas, 358; Roberts v. State, 17 Texas Cr. Rep., 86; Stooksbury v. Swan, 85 Texas, 573; Lang v. Crothers, 51 S. W. Rep., 271; Bowman v. Texas Brewing Co., 43 S. W. Rep., 809;

Bonner v. Glenn, 79 Texas, 534; Lee v. International & G. N. Ry. Co., 89 Texas, 583; Long v. Red River T. & S. Ry., 85 S. W. Rep., 1048; Guthrie v. Maine Central Co., 18 Atl., 297; Clark v. New York L. E. & W. Ry., 40 Hun, 605; Soeder v. St. Louis, I. M. & So. Ry. Co., 13 S. W. Rep., 714; Paine v. Eastern Ry. Co., 64 N. W. Rep., 1005; Philadelphia R. R. Co. v. Huber, 18 Atl., 334; Bromley v. Birmingham R. C., 11 So. Rep., 341; Central Ry. v. Rouse, 3 S. E. Rep., 307; Mahoney v. New York Central R. R. Co., 15 N. Y. Sup., 502

*John M. King* and *Hicks & Hicks*, for appellee.—There must be evidence not only showing that there was negligence as alleged, but there must also be evidence showing that such negligence caused the injury, and the evidence in this case, circumstantial or otherwise, wholly failing to show that the injury was the result of the alleged negligence, the trial court did not err in preemptorily instructing the jury for the defendant; the evidence adduced at best could only leave the jury to surmise and conjecture as to the cause of the accident. Texas & N. O. Ry. Co. v. Crowder, 63 Texas, 502, 76 Texas, 501; Texas & Pac. Ry. Co. v. Shoemaker, 84 S. W. Rep., 1049; Broadway et al. v. San Antonio Gas Company, 60 S. W. Rep., 270; Houston & T. C. Ry. Co. v. Loeffler, 59 S. W. Rep., 558; Johnson v. Houston & T. C. Ry. Co., 72 S. W. Rep., 1021; Philadelphia Ry. Co. v. Schertle, 2 Am. & Eng. Ry. Cases, 1st series, 158; Corcoran v. Boston & Albany Ry. Co., 133 Mass., 507, s. c. 12 Am. & Eng. Ry. Cases, 1st series, 226; Neal v. Chicago & R. I. Ry., 105 N. W., 197, 2 Law Rep. Ann., n. s. 905; Manning v. Chicago & W. Ry., 105 Mich., 260, 63 N. W. Rep., 312; Peppet v. Michigan Cent. Ry. Co., 119 Mich., 640, 78 N. W. Rep., 900; Dobbins v. Brown, 119 N. Y., 188, 23 N. E. Rep., 537; Patton v. Texas & Pac. Ry. Co., 179 U. S., 658; Matson v. Qualey Construction Co., 90 Ill. App., 260; Southern Pac. Ry. Co. v. Johnson, 69 Fed., 559; Fitzgerald v. New York, C. & H. R. Ry. Co., 154 N. Y., 263, 48 N. E., 514.

JAMES, Chief Justice.—This is an appeal from an instructed verdict in favor of the railway company.

Leroy English was brakeman on defendant's train composed of twelve cars loaded with coal, and a caboose. From the engine of which train he fell, or was caused to fall, while passing the bridge over the San Marcos River in going from the north towards the town of San Marcos. He fell over the bridge into the river where his body was found. The action is by his widow and minor child to recover of defendant their damages occasioned by his death.

The negligence of defendant is alleged substantially thus: That deceased in the performance of his duty was at the time standing on a metal platform called the "apron." The apron consists of a sheet of steel or like metal about 5-16 of an inch thick and between 16 and 20 inches wide in the gangway of the engine, fastened to the floor by hinges on the end inside the engine and the other end extending over the end of the tender or tank far enough, under proper conditions, to furnish a safe passage way from the engine to the tender or tank, and this was to keep a person's foot from slipping between the engine and tank. The apron on this engine was alleged to be in defective and unsafe condi-

tion in that both the hinges were loose, also that the drawbar which connected the engine and tender was too long for the purpose for which it was intended, that there was considerable slack or lost motion at that place, which condition was unusual, unnecessary and dangerous by reason of all which the said Leroy English fell and was thrown as aforesaid.

Defendant introduced no testimony, but on its motion the court instructed the jury to return a verdict for defendant on the evidence presented by plaintiff.

For an understanding of the case made by plaintiff we may explain that plaintiff showed that the bar which coupled the engine and tender was defective in that it had become so worn and lengthened by use that when there was lost motion between the engine and tender the apron would drag down behind the bumper timber and wiggle there until such time as this slack would tighten up, and then the apron would fly up. The witness described the matter thus: The apron "instead of lying 16 or 20 inches over the tank, it only laid a matter of three or four inches, something like that, and when I would apply the air the tank would drop back and it (the end of the apron) would drop in behind these bumper timbers and would catch in such a manner as that (illustrating) until there was a little bit of slack and then it would throw it right up, sometimes entirely the length of the hinges—say that is the entire length of the cab (illustrating) it would throw itself up that way, from the force given it, . . . if there was no lost motion in the drawbar, and the shafting irons were together between the engine and tank, the apron would be slippery and bad, but it couldn't get down behind there. The way it would get down it would form a steel spring, as near as I can describe it to you, it would be just like standing on a steel spring when in that condition. . . . The effect of the condition I have described in this apron, the falling down, getting caught and then suddenly released, the effect that would have upon a man standing on the engine, it would throw him like a ball out of a catapult, if he was in the gangway or upon it it would throw him out of the gangway, if he was in the center it would either throw him in the coal pit or throw him up against the boilerhead of the engine, if it was in that condition when it flew out, it would throw him somewhere undoubtedly."

There was testimony, which we think was proper testimony, though appellee excepted to it and claims it was not entitled to be considered, which showed that deceased had just gotten up from behind the engineer where he had been sitting on the seat box and was standing between the engine and the tender at the time he fell or was thrown off. No one saw him when he went off the engine, the engineer saw his legs disappear over the bridge, and immediately applied the air, and before the train stopped jumped off and ran back. The conductor who was in the caboose on feeling the air, it being an emergency brake, went out on the platform to see what was the matter, and saw the engineer running back whom he went to meet, and who told him that English had fallen off and soon afterwards they saw the latter's body in the water.

As already stated no one saw how the accident occurred. Deceased was standing in the gangway, between the engine and tender, at the time and upon the apron, doubtless.

The witness from whom we have already quoted testified in reference

to this engine with its defective drawbar that the cause of the lost motion was the straining, pulling of the train, jerking and such as that. In answer to the question: "Now state, Mr. Spangler, when and under what circumstances the buckling of the apron might result?" He replied: "It would result at any time at all—if the slack would run up from the rear of the train upon the rear end of the tank, that would cause it to buckle up at any time, more especially when you were making a stop or using air on the engine." The same witness testified that he had put washers on the loose hinges and tried to washer it up on account of several having fallen on the apron.

The said witness was not on the train at the time, and the only person who was on the train who testified was the conductor, Stapp. Plaintiffs used his testimony. He testified that the engineer told him about having seen English disappearing over the bridge, and about the position he was occupying when he last saw him. He testified that the train was composed of the twelve loaded cars and caboose. That on the train approaching the bridge a service application of air had been made in order to slow it down before going on the bridge. That the track was practically level all along there. Slightly down grade if anything, and that there was no unusual movement of the train until he felt the emergency application, when he went to the caboose platform to see what was the matter. He testified: "I felt the air go on just before the caboose got to the bridge and I stepped out on the platform and the engineer had got off his engine—the engine, the train was then rolling about three or four miles an hour or about that rate of speed; he was running back and when he got close to me he hallooed at me and said, "Bob,"—that is what we called English,—"fell into the river." He testified that at the time he felt the application of air the caboose was about two or three car lengths, not over two car lengths from the bridge north of the bridge, which would put the engine about two or three car lengths south of the bridge as he judged, that the engine was moving over the bridge at about ten or twelve miles an hour. That at the time the engineer claimed he saw English go over the bridge he applied the air, and that there was no unusual jar or jerking of the train any more than the ordinary operation of a train of that size, the train was just rolling at the time and he did not think the engineer was working steam. He testified also that a couple of hours or so previous English complained of being ill.

The above is substantially the state of the testimony concerning the negligence of defendant and the cause of the fall or throwing of deceased from the engine.

It is clear, and it is admitted by appellee, that the testimony showed negligence in the loose condition of the apron, and also in the condition of the drawbar, but the claim is that no causal connection is made to appear between such negligence and the accident.

We think the testimony excludes the theory that the defective drawbar had anything to do with causing the accident, from the standpoint of sufficient evidence. The testimony was that the train was rolling along on practically a level road, slightly down grade if any, without any movement whatever that was unusual. The conditions which would serve to bring the apron into activity as a spring appear not to have been

in existence at the time. No application of the air was made until after the engineer saw English go over the bridge, the steam was not being worked, the train was "just rolling along" without any unusual movement, by which we understand that it was rolling on its own momentum without any exertion to slow it up or stop it. There is no testimony found from which it could be implied or inferred that the apron had occasion to work itself into a spring, but the testimony is affirmatively against such a conclusion. Without some testimony indicating this, a finding that it did so would certainly be unwarranted, especially when there were other ways by which this fall might have been brought about.

Neither is there any support in the testimony for a finding that the deceased was made to fall by the loose condition of the apron. True the witness testified that he had seen others fall upon it and that this had prompted him to washer it. The most that can be said of this testimony is that it showed a tendency of the apron to cause persons to fall, not that it caused deceased to fall. This would be a conjecture, in view of other causes, which were not improbable. It is a matter of common knowledge that the act of a person passing from one moving car to another, or standing on a train between moving cars, is naturally attended with the danger of his losing his balance, and a person, occupying such a situation, may through a misstep or some act purely his own, be precipitated from the train.

The testimony precluded the finding that deceased was thrown from the train by reason of the apron "buckling" for against evidence, presumptions and inferences are not indulged. With that out of the way the cause of the fall is all speculation. (Railway v. Greenwood, 89 S. W. Rep., 810.)

*Affirmed.*

### ON MOTION FOR REHEARING.

The expression in the opinion, "No application of air was made until after the engineer saw English go over the bridge," referred to the time proximately connected with the accident. The testimony was set forth in the opinion showing a previous application of air made to slow down for the purpose of approaching the bridge. Plaintiffs did not show how long before reaching the bridge this service application had been made, and considering its purpose, it must have been made some time before the train came to the bridge. This fact together with testimony that the train had arrived at the bridge and was rolling uniformly on its own momentum which there was nothing to contradict, seem to us to exclude the theory that the apron buckled and threw plaintiff off. If the jury had found such fact, they would have disregarded the evidence. We are still of the opinion that, although there was negligence of appellee shown which could have been instrumental in bringing about such an accident, the testimony adduced would not have warranted the jury in deciding that it was so caused. The motion is overruled.

*Overruled.*

Writ of error refused.