**HOUSTON EAST & WEST TEXAS RY. CO.
v. McHOWELL.   (No. 1284.)***

(Court of Civil Appeals of Texas.   Beaumont.
Nov. 30, 1925.   Rehearing Denied
Dec. 9, 1925.)

**1. Railroads ☞260—Ordinary care required as
to 'employés of railway using tracks of an-
other.**

When defendant enters into written con-
tract with another railway to allow second
railway to use its tracks, employé of second
railway is entitled to same degree of care from
defendant that it owes its own employés, which
is that of ordinary care.

**2. Death ☞76 — Causal connection between
negligence of railway and death of night
watchman held not shown.**

In action against railway for death of night
watchman employed by company using its
tracks, proof that railway negligently distribu-
ted large pieces of burnt gumbo along its track,
and that body of deceased was found along track
with head severed, does not establish causal
connection between railway's negligence and
death of deceased.

**3. Negligence ☞121(5)—Burden of proof on
plaintiff to establish causal connection be-
tween negligence and injury.**

Burden of proof is on plaintiff, not only to
establish negligence of defendant, but to es-
tablish causal connection between that negli-
gence and injury or death.

**4. Death ☞76—Evidence must establish "rea-
sonable conclusion" or "reasonable infer-
ence" death was caused as alleged.**

When cause of death is unexplained, evi-
dence must authorize a "reasonable conclusion"
or "reasonable inference" that it was caused
as alleged; i. e., there must be some tangible
fact or circumstance from which jury can con-
clude that negligence caused death, and, if
there is none, a jury cannot be permitted to
conjecture as to cause.

Appeal from District Court, Angelina Coun-
ty;  L. D. Guinn, Judge.

Action by Mary Texas McHowell against
the Houston East & West Texas Railway
Company.   From a judgment in favor of the
plaintiff, defendant appeals.   Reversed and
remanded.

Garrison & Watson and Baker, Botts, Par-
ker & Garwood, all of Houston, for appellant.
Collins & Collins, of Lufkin, for appellee.

HIGHTOWER, C. J.   This suit was filed in
the district court of Angelina county by the
appellee, Mrs. Mary Texas McHowell, against
appellant, Houston East & West Texas Rail-
way Company, and the Angelina & Neches
River Railroad Company to recover damages
alleged to have been sustained by appellee on
account of the death of her husband, J. T
McHowell, which she alleged was caused by

negligence on the part of both defendants.
Before announcement of ready for trial, ap-
pellee dismissed as against the Angelina &
Neches River Railroad Company, and there-
after sought recovery against appellant only.
The trial was had with a jury, and the re-
sult was a verdict and judgment in favor of
appellee against appellant for $4,000.

The judgment in this case is based upon the
following facts:

J. T. McHowell met his death from some
cause about 1 o'clock at night on the 15th
of May, 1924.   At the time of his death he
was an employé of the Angelina & Neches
River Railroad Company, and was engaged
in watching that night a string of box cars
belonging to the Angelina & Neches River
Railroad Company, and which were load-
ed with freight and were standing upon
a side track belonging to appellant in its
yards in the town of Lufkin.   The deceased
had been in the employ of the Angelina &
Neches River Railroad Company as night
watchman of this string of cars for a period
of six nights in succession at the time he
met his death.   It was his duty under his
employment to keep watch on this string of
box cars each night throughout the entire
night to see that they were not broken open
by burglars and thieves.   This string of box
cars was standing upon one of appellant's
side tracks, and in close proximity to ap-
pellant's main line in the town of Lufkin,
in accordance with the provisions of a writ-
ten contract between appellant and the An-
gelina & Neches River Railroad Company,
the contract providing that the Angelina &
Neches River Railroad Company had the
right to use appellant's tracks, yards, depot,
etc., in the town of Lufkin as its needs as a
railroad company might require, and for the
use of such tracks, yards, etc., by the Ange-
lina & Neches River Railroad Company ap-
pellant, under the contract, was paid a con-
sideration of $900 per year.

Appellant's main line runs through the
town of Lufkin in the directions of north and
south, and at the point where McHowell's
death occurred there are several side tracks
and passing tracks on the west side of ap-
pellant's main line, and one side track on the
east side of the main line.   The first passing
track on the west side of appellant's main
line is about 10 or 12 feet distant from the
main line track, and the side track on which
the freight cars were standing and being
watched by McHowell was about 10 feet dis-
tant from appellant's main line;  all the side
tracks and passing tracks being practically
parallel with the main line.   Between ap-
pellant's main line and the first passing track
on its west side there was a path that was
commonly used by people in general in the
town of Lufkin in going to and from appel-
lant's depot, and this path, and in fact all the

---

space between appellant's main line and the first passing track on the left, was regularly used and occupied by members of train crews in appellant's employ while in the discharge of their duty as such employés.

The point where McHowell's body was discovered is about 400 feet south of appellant's depot in the town of Lufkin. The discovery was made about 1:30 o'clock on the night of May 15, 1924, by one of appellant's freight train conductors as his train started out of the Lufkin yards going south at that time. This discovery was made by the freight conductor about 20 or 30 minutes after one of appellant's passenger trains on its main line had passed the point where the body was found, going north. So far as reflected by the present record, there was no eyewitness to McHowell's death, that is, as to how it occurred, and appellee sought to prove by circumstances alone the manner and cause of his death.

For several months prior to McHowell's death appellant had been ballasting its main line track through the town of Lufkin, using a material which the witnesses called burnt gumbo. This material was hauled by appellant and distributed along its main line track through the town of Lufkin, and some of it was in very large lumps; some of appellant's witnesses testifying that some of these lumps were from 12 to 14 inches thick and weighed from 15 to 25 pounds. The proof showed that this ballasting material was distributed by appellant all along its main line track in the immediate vicinity of the standing freight cars on the side track that McHowell was watching on the night of his death, and some of these lumps of burnt gumbo had rolled down off the main line track and were scattered along in the path and space between appellant's main line and the first passing track on the west side of the main line, and some of these large lumps of burnt gumbo were right about opposite where deceased's body and his head, which was completely severed from the body, were lying at the time the accident was discovered. McHowell's head, when first discovered, was lying almost exactly in the middle of appellant's main line track between the two rails thereof, and his body was lying about 30 feet north of the head just on the outside of the west rail of appellant's main line, and the body was lying at perfect right angles with the rail, the severed neck being right up against the rail and the feet straight out from the rail. There were no bruises on the head or body, other than the severed neck, and there were no indications on the clothing that the body had been dragged from the point where the head was lying. There were only a few blood spots found on the west rail of the main line at points between the head and the body, and right opposite the head small pieces of flesh and blood were found on the west rail of the main line.

It was appellee's theory and contention that, while McHowell was engaged in the discharge of his duty as watchman of the freight cars on the siding east of the track, and while walking along the path between the main line and the passing track on the west, he stumbled over some of the lumps of burnt gumbo that were in the path, and was thereby caused to fall under appellant's passenger train going north while the same was passing him. It was alleged by appellee that it was negligence on the part of appellant to permit the lumps of burnt gumbo to be and remain in the path as it was, and that McHowell, while in the exercise of proper care, and while discharging his duty as night watchman, stumbled over some of this ballasting material, and was thereby caused to fall under the passing passenger train, and his head was thereby severed, resulting in his death.

After general demurrer and general denial, appellant interposed a general plea of contributory negligence, and also a plea of assumed risk.

The issues, as framed and answered by the jury, were as follows:

Special Issue No. 1: "Did the defendant, the Houston East & West Texas Railway Company, its agents, servants, or employés, leave, place, or allow to remain on its premises between the main line track and the west passing track near where deceased's head and body was found on or about the 15th day of May, A. D. 1924, pieces of burnt gumbo, gravel, or ballasting material of the kind and character described in plaintiff's petition, and in the manner described in plaintiff's petition?"

To this issue the jury answered: "Yes."

Special Issue No. 2: "Was the leaving, placing, or allowing to remain on its premises between the main line track and the west passing track where deceased's head or body was found, on or about the 15th day of May, A. D. 1924, of pieces of burnt gumbo, gravel, or ballasting material of the kind and character described in plaintiff's petition and in the manner described in plaintiff's petition, if any you find existed at said time and place, a defect in the premises of the defendant; that is to say, did the maintenance of such condition, if any existed, expose the employés of the defendant, Houston East & West Texas Railway Company, and of the Angelina & Neches River Railroad Company, while performing duties similar to those performed by deceased, if any he was performing, at the time of his alleged injury, to unnecessary danger of injury in the performance of such duty?"

To this issue the jury answered: "Yes."

Special Issue No. 4: "Was the leaving, placing, or allowing to remain on its premises between the main line track and the west passing track where deceased's head or body was found, on or about the 15th day of May, A. D. 1924, of pieces of burnt gumbo, gravel, or ballasting material, of the kind and character described in plaintiff's petition, and in the manner described in plaintiff's petition, if any you find had been so left, placed, or allowed to remain thereon, negligence upon the part of the defendant, the

Houston East & West Texas Railway Company, as that term has been defined to you herein?"

To this issue the jury answered: "Yes."

Special Issue No. 5: "Was such negligence, if any, the proximate cause of the death of J. T. McHowell?"

To this issue the jury answered: ."Yes."

Special Issue No. 6: "Was the deceased, J. T. McHowell, guilty of negligence in being at the place where his body was found and where he was killed, if you find he was killed at the time of his injury, if any, and death?"

To this issue the jury answered: "No."

Special Issue No. 8: "Was the deceased, J. T. McHowell, in the proper and necessary performance of his duties as watchman at said time and place at the time he was killed, if you find he was killed?"

To this issue the jury answered: "Yes."

The jury also, in answer to proper special issue, found that $4,000 would be a fair and reasonable compensation for the loss sustained by appellee in consequence of her husband's death.

Thus it will readily be seen that the jury found that McHowell's death was proximately caused by appellant's negligence as pleaded by appellee, and that McHowell was not guilty of any negligence contributing to his death, and that he was killed while in the proper performance of his duties. This verdict, if sustained by sufficient evidence, entitled appellee to the judgment from which this appeal is prosecuted.

Appellant has advanced a number of propositions for reversal of the judgment, but we shall only specifically mention and discuss two of them.

[1] It is first contended that the evidence adduced upon the trial showed that McHowell, at the time of his death, was a mere licensee upon appellant's railroad premises, and that, being a mere licensee, he took the premises as he found them, and that, even if appellant was guilty of negligence in leaving the ballasting material as it was, nevertheless there was no breach of duty on its part to McHowell, and that there should have been no recovery. We overrule this contention because the evidence in the record shows without contradiction that, by the provisions of a written contract between appellant and the Angelina & Neches River Railroad Company, the freight cars that McHowell was watching at the time of his death were placed upon appellant's side track, and that appellant's premises at that point were being used by the Angelina & Neches River Railroad Company, with appellant's consent, for railroad purposes, and therefore McHowell, who was an employé of the Angelina & Neches River Railroad Company, was entitled to the same degree of care from appellant that it owed to its own employés, which was that of ordinary care. This question is too well settled by authority in this state to require further discussion by us. M., K. & T. Ry. Co. v. Beasley, 106 Tex. 160, 155 S. W. 183, 160 S.

W. 471; M., K. & T. Ry. Co. v. Grimes (Tex. Civ. App.) 196 S. W. 691; T. & S. Ry. Co. v. Lane, 79 Tex. 643, 15 S. W. 477, 16 S. W. 18. See, also, Nugent v. Railway Co., 80 Me. 62, 12 A. 797, 6 Am. St. Rep. 151.

[2] The next contention made by appellant, and which after careful consideration of this record and the authorities applicable we have concluded must be sustained, is that the evidence was wholly insufficient to show any causal connection between appellant's alleged negligence and the death of McHowell.

We have already stated that there was no eyewitness to McHowell's death, but counsel for appellee contends that the circumstances taken as a whole were sufficient to show with reasonable certainty, that is, to authorize the jury to reasonably infer that McHowell stumbled over some of the burnt gumbo that was negligently left in the path between the passing track on the west and the main line, and that he was hereby caused to fall in the direction of appellant's northbound passenger train then passing by McHowell, and that his head fell over the west rail and was severed from the body, resulting in his death. Counsel for appellee contend that this is the only reasonable theory touching McHowell's death, and that it must have been caused in that manner. It is argued by counsel in that connection that the physical facts with reference to the position of the body and the head show that it was impossible for McHowell to have been run over by the engine of the train while attempting to cross the track ahead of it, or that he could have been sitting down or lying down on the track at the time of his death, and that therefore he must have fallen under the moving train as it was passing by him and was caused to so fall by stumbling over some of the ballasting material in the path where he was performing his duties as night watchman. We have already shown the position of the head, and that of the body, as they were discovered. As to these matters there was no conflict whatever in the evidence. There was some conflict as to whether the head was lying on a newspaper at the time it was first discovered. Two of appellant's witnesses swore positively that the head was lying on a newspaper spread out in the middle of the track, while other witnesses for appellee testified that they saw no newspaper under the head, and they swore that the head had not been moved from where it was lying at the time they saw it. There was also some conflict in the evidence as to the sufficiency of the lights in that immediate vicinity to enable McHowell to see the lumps of burnt gumbo over which appellee claims he stumbled and fell under the train.

The last time that McHowell was seen alive was about 15 or 20 minutes before appellant's passenger train going north arrived at Lufkin. At that time McHowell was seen in a

restaurant or café not far distant from the point where he was watching the freight cars. The witness who saw him stated that he thought that McHowell was getting some water or coffee or lunch or something in the restaurant at the time. McHowell was 77 years and 28 days old at the time of his death, and weighed about 200 pounds, and was about 5 feet and 11 inches tall. He was in good health up to the time of his death, and was a very active and strong man for his age. He had not been subject to any kind of sudden sickness or dizzy spells so far as any of the witnesses knew. It was shown that he had no money at the time of his death, and also that he had no known enemies. These are the material facts and circumstances upon which the jury's verdict in this case was rendered. We have concluded that these facts and circumstances were not sufficient to show with reasonable certainty or to authorize a reasonable deduction or inference by the jury that McHowell's death was caused by his stumbling over some of the ballasting material and falling under appellant's passenger train, as contended by appellee. It is possible, of course, that McHowell's death might have been so caused, but it is just as possible or probable, so far as any tangible evidence, circumstantial or otherwise, shows, that his death might have been caused in some other way.

[3, 4] In cases of this character, the burden of proof is upon the plaintiff, not only to establish the negligence as pleaded, but also the burden is upon the plaintiff to establish causal connection between that negligence and the injury or death. Causal connection can no more be presumed than the negligence itself. Neither can rest upon mere presumption, but both must be proved. Now the jury has found upon sufficient evidence as we hold, that appellant was guilty of negligence in permitting the ballasting material to be in the path between the main line and the passing track, as it was, and that deceased was not guilty of contributory negligence, and that he was performing the duties of his employment at the time of his death, and these findings we would not disturb, but we cannot permit this judgment to stand upon mere conjecture, surmise, or speculation as to what caused the deceased to fall upon appellant's track, if he did, and be killed. The appellate courts of this state have held in many cases of this character that before recovery can be sustained, where the cause of the death is unexplained, as here, that the plaintiff must establish by circumstance sufficiently strong the causal connection between the claimed or admitted negligence and the injury or death. Some of the authorities say that this evidence must be such as to establish the causal connection with reasonable certainty, while others use the expression that it must be such as to authorize a reasonable conclusion or inference by the jury that the death was caused

as alleged. We take it that by the expressions "reasonable inference" and "reasonable conclusion" is meant that there must be some tangible fact or circumstance from which the jury might reasonably conclude that the alleged negligent act or omission brought about the death, and, unless there are some facts or circumstances of that nature and strength, a jury cannot be permitted to merely conjecture that the death was caused as claimed by the plaintiff.

It must be admitted that this is a very remarkable case. If the deceased was walking along the path between the passing track and appellant's main line at the time its passenger train was passing that point, and if he stumbled over some of the ballasting material and fell with his head across one of the rails, and that member was severed completely from the body by the wheels of the passing train, as contended by appellee, it almost staggers the mind to believe that the body could have been rolled a distance of approximately 30 feet north over the rough ends of ties and ballasting material without being in some way bruised or the clothing in some way being torn, and especially does this seem improbable when, as shown by the undisputed evidence, the body of this large old man was lying at complete right angles with the west rails of the main line. It seems to us that appellee must rest her contention alone as to the cause of decedent's death upon the position of the head and that of the body at the time they were found, and the fact that there was nothing to indicate that deceased might have been murdered. We believe that in the following cases the facts were stronger in favor of the plaintiff touching the causal connection between the alleged negligence and the ensuing death than are the facts touching that point in this case, and yet our Supreme Court and Courts of Civil Appeals would not permit verdicts and judgments to stand. We refer to T. & P. Ry. Co. v. Shoemaker, 98 Tex. 456, 84 S. W. 1049; M., K. & T. Ry. Co. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 810; English v. I. & G. N. Ry. Co., 44 Tex. Civ. App. 467, 98 S. W. 913; Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324; Ry. Co. v. Crowder, 63 Tex. 505; Lone Star Brewing Co. v. Willie, 52 Tex. Civ. App. 550, 114 S. W. 186; Wintuska v. L. & M. R. R. Co. (Ky.) 20 S. W. 819; Davis, Agent, v. Castile (Tex. Com. App.) 257 S. W. 872; Stone & Webster Eng. Cor. v. Brewer (Tex. Civ. App.) 161 S. W. 38, and authorities therein cited; T. & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 3.

There is another proposition advanced by appellant touching the charge of the court as to appellee's measure of damages, which we find is wholly without merit, and, since it presents no new question of law, it is overruled without discussion. The contention advanced by appellant that the verdict and judgment are excessive in amount we need

not consider; the judgment being reversed upon other grounds. Counsel for appellant insist in their brief that this judgment should be reversed and rendered, but we cannot say from the record before us that the appellee might not be able, upon another trial, to produce some character of evidence tending to show with more certainty the cause of J. T. McHowell's death.

It follows from these views that the judgment should be reversed and the cause remanded, and it has been accordingly so ordered.