### HOUSTON E. & W. T. RY. CO. v. Mc-HOWELL. (No. 1606.)

Court of Civil Appeals of Texas. Beaumont. Jan. 20, 1928.

Rehearing Denied Feb. 1, 1928.

Death ⟜103(2)—Evidence as to causal connection between death of deceased and railway's negligence held insufficient to take death action to jury.

In action against railway for death of plaintiff's husband, alleged to have stumbled over ballasting material, and to have fallen under defendant's passenger train, evidence as to causal connection between death of deceased and negligence of defendant *held* insufficient to take case to jury.

O'Quinn, J., dissenting.

Appeal from District Court, Angelina County; C. A. Hodges, Judge.

Action by Mary Texas McHowell against the Houston East & West Texas Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Garrison & Watson, of Houston, for appellant.

Collins & Collins, of Lufkin, for appellee.

WALKER, J. This was a suit for damages by appellee on allegations that appellant had negligently caused the death of her husband. On a former appeal, H. E. & W. T. Ry. Co. v. McHowell, 278 S. W. 258, in an opinion by our Chief Justice, this court reversed a judgment in favor of appellee on the ground that the facts and circumstances were not sufficient to show with reasonable certainty or to authorize a reasonable deduction or inference by the jury that McHowell's death was caused by his stumbling over some of the ballasting material and falling under appellant's passenger train. The case was remanded for a new trial on the ground that the plaintiff might "be able, upon another trial, to produce some character of evidence

tending to show with more certainty the cause of J. T. McHowell's death." The case was again tried, and appellee read in evidence the entire statement of facts before us on the former appeal. In addition, she called to the stand three of the witnesses used on the former trial, W. S. Scott, R. L. Harris, and M. T. Gibson, and put in evidence the depositions of A. C. Diamond and J. C. Bethel, the engineer and fireman of the train which passed north through Lufkin shortly before McHowell's body was found. The case was submitted to the jury on this evidence, and judgment rendered in favor of appellee. As a statement of the case on this appeal, we adopt and make a part of our opinion the entire opinion on the former appeal. In addition, we take the following statement of the new evidence from the appellant's brief:

"Mr. Scott testified, in addition to his former testimony, that no depredations and thefts or any thing of that kind occurred in respect to the cars McHowell was watching on the night of the accident.

"Mr. R. L. Harris, on the first trial (which was had about six months after the accident), testified that he could not say whether or not the deceased's feet were further south or further north than his shoulders. On the last trial he was positive that the feet were further south than were the shoulders; that the neck was against the rail.

"On the first trial Mr. Harris testified that he did not observe anything on Mr. McHowell's clothing or his arms or hands, or any part of his body. On the last trial, he testified that the clothing had red-looking dust and dirt on it; that it was distributed all over the body, and looked fresh.

"In all other respects, the witness Harris' testimony was practically the same on the last trial as on the former trial.

"M. T. Gibson, on the first trial, testified that the neck to the body was lying right against the rail with his feet out from it. On the last trial he stated that the neck and shoulders (the neck was mashed away) were some eight to twelve inches from the rail, and that the body was lying at an angle which he twice drew while on the witness stand, and one drawing was measured by the witness Garrison, and proved to be an angle of 65 degrees, and the other drawing, which was also measured by the witness Garrison, proved to be an angle of 57 degrees.

"As to the condition of the body of the deceased, the witness Gibson on the first trial testified that, other than having the head cut off, there were one or two small bruises on his chest, and a little piece of hide knocked off one of his hands. On the last trial he testified that there were bruises across the chest, across the shoulders, and the point of the shoulders, and possibly one on the back. Also on the last trial he testified that, in addition to the skinned place on one hand, there was a right smart grease in the palm of the right hand.

"With the exception that Gibson, in addition to above, also testified as to the location of the grease boxes and beams on the sides of the passenger coaches generally, which evidence was undisputed, his testimony was otherwise practically the same as contained in the record made on the first trial.

"The witnesses Diamond and Bethel testified that they were the engineer and fireman on the north-bound passenger train, which is presumed to have run over McHowell, and that they saw no one on the track as they approached the depot at Lufkin; neither did they see any one walking between the main line and the passing track as they approached said station."

On this statement, together with the statement made by the Chief Justice on the former appeal, it is the conclusion of the court that the evidence offered by appellee did not strengthen her case. Therefore, on the authorities cited on the former appeal and the analysis therein made on the legal effect of the testimony, the judgment of the trial court in favor of appellee must be reversed. A review of the record convinces us that appellee would not be able to strengthen her case upon another trial; therefore it becomes our duty to render judgment here that she recover nothing on her allegations, and that appellant go hence without day and recover its costs.

Reversed and rendered.

O'QUINN, J. I cannot agree with my Associates in their reversing and rendering this case on the ground that as a matter of law there is "no testimony" showing the causal connection between the death of deceased, McHowell, and the negligence of appellant. This is the second time this case has been before this court. For a full statement of the facts on the first trial, see 278 S. W. 258. On the last trial the whole of the evidence adduced on the first trial was read to the jury, and some additional evidence was offered by plaintiff. For the new evidence, see the majority opinion above. I do not deem it necessary to restate the evidence on the former trial, but here refer to and make it, together with the statement of the new evidence stated in the majority opinion above, a part of this dissenting opinion.

On the facts shown and referred to, it is my opinion that there was sufficient evidence that deceased was killed in the manner alleged to require the case to be submitted to the jury, and to support their finding of negligence against appellant, and to show that said negligence was the proximate cause of deceased's death. These facts are established beyond cavil:

(a) The appellant placed, and permitted to remain, numerous large lumps of burnt gumbo or ballast along the sides of the main line track of the railway and in the path between the main line and the west passing track.

(b) That the said path between the main line and the west passing track was then being used, and for many years had been used, by the railway employees and the public as

a passageway between said lines of track and in going to appellant's nearby depot.

(c) That the freight cars which deceased was employed to watch were on the east side track near to the main line, and parallel thereto, and within a few feet of same, and where these pieces of burnt gumbo or ballast were placed and allowed to remain.

(d) That deceased, though some 77 years of age, was a large, well preserved, robust, healthy, and vigorous working man, there being no evidence of his having had any physical ailment in recent years, and none that he had ever suffered from dizziness, nervous collapse, or heart trouble.

(e) That only a few minutes before his dead body was found decapitated, with the head between the rails of the main line track and his neck or shoulders against the west rail of the main line, he was at a nearby restaurant getting some coffee before going back to his place to watch the freight cars.

(f) That the north-bound night passenger train passed along and over the main line where his body was found only some 15 minutes before. It is admitted by appellant in its brief, pages 27 and 28: (a) That the said passenger train killed the deceased; (b) that deceased was not on the track at the time that he was killed, that is, that he was neither walking, laying, nor sitting upon the track when the train passed along.

The fact that he was killed by the train shows that he was at and near the main line track at the time the passenger train passed. He was in the proper place to discharge his duty to his master, and in the pathway commonly used by railway employees or those working about the cars or tracks at that place. He was not standing still or sitting still when he received his injury, for in that event he would not have 'fallen under the train. So the inference from all the facts and circumstances is irresistible that deceased must have been walking in the path by the main line track, and stumbled over the pieces of gumbo or ballast and was thus caused to fall under the train and met his death. This inference, it seems to me, is the exclusive and only one reasonably deducible from the uncontradicted and admitted facts,

and an inference or conclusion the jury could legitimately draw. The fact that he was run over and his head cut off shows that from some cause he was made to fall under the cars and upon the track. As it is admitted that he was not upon the track, and it not appearing that deceased was ever affected with dizziness, nervous collapse, or heart trouble, but, to the contrary, was strong, healthy, and vigorous, and no other cause being shown to have existed that could have thrown him under the cars and upon the track, other than the pieces of gumbo or ballast, and he being in the path along which he would move, and the train passing him, I think the facts are ample to raise the issue that deceased was walking in the path, and stumbled over the gumbo and fell under the train and was killed.

The rule is well settled that, if there is any evidence, however slight, it is sufficient to raise the issue in dispute and compel the court to submit it to the jury. The evidence tending to show that the death of deceased was caused in the manner alleged, the jury was authorized to draw all such inferences and conclusions from the facts and circumstances in evidence before them as were reasonable. I do not think it can be said that the evidence raised a mere surmise or suspicion as to the manner of deceased's death. It points with sufficient certainty to the way and the cause of same. Galveston City Railway v. Hewitt, 67 Tex. 482, 3 S. W. 705, 60 Am. Rep. 32; Washington v. Railway, 90 Tex. 314, 38 S. W. 764; Fort Worth & R. G. Railway v. Kime, 54 S. W. 240;[1] Houston, E. & W. T. Railway v. Boone, 105 Tex. 188, 146 S. W. 533, 535; Fort Worth & D. C. Railway v. Stalcup (Tex. Civ. App.) 167 S. W. 279 (writ refused); Texas Electric Railway v. Stewart (Tex. Civ. App.) 217 S. W. 1081, 1085 –1086 (writ refused). I do not deem it necessary to discuss the facts or the holdings of the cited cases, but will say that they are in point and support the contention that the facts in the instant case are sufficient to show causal connection between the death of deceased and the negligence of appellant.

---

[1] Reported in full in the Southwestern Reporter; not reported in full in 94 Tex. 649.