## CAMPOS v. ST. LOUIS, B. & M. RY. CO.

### No. 8674.

Court of Civil Appeals of Texas. San Antonio.

Nov. 18, 1931.

J. O. Prentiss, of San Benito, and J. I. Coursey, of Harlingen, for appellant.

Davenport, West & Ransome, of Brownsville, for appellee.

SMITH, J.

Antonio Campos, a farm hand, lived with his wife and three minor children near the railway company's right of way, in Cameron county. An irrigation ditch crossed under the railway tracks near Campos' house, and Campos had charge of a corn patch irrigated from said ditch. A public highway also crossed the railroad near said ditch. All the night of July 21-22, 1930, Campos was engaged in irrigating the corn patch. A gate was set in the ditch on each side of the railroad. At about 4:30 o'clock in the morning Campos left his house to go across the railroad, 100 or more feet away, and close the gate on the far side. It was dark at the time. A fellow workman was sitting on Campos' porch, and saw the latter go towards the railroad, but soon lost sight of him in the darkness. A short time later a freight train passed along the railroad, and there was evidence that the statutory signals for highway crossings were not given by the trainmen. An hour or two later Campos' severed body was found lying athwart one of the rails of the railroad tracks, adjacent to the public crossing, in front of his house, near the gate he had intended to close in the irrigation canal. Subsequently Campos' widow sued the railway company in her own behalf and that of her children, for damages for the alleged wrongful death of her husband. The cause was tried, and, from a judgment based upon a directed jury verdict against her, the widow has appealed. The appeal presents the sole question of whether the trial judge erred in directing a verdict, in view of the facts stated.

It may be assumed, as a matter of law in view of the directed verdict, that Campos was killed by appellee's train. It may be further so assumed that the operatives of appellee's train were guilty of negligence in approaching the public highway crossing near the point of the accident without ringing the bell or sounding the whistle of the engine, as required by familiar statutes (Rev. St. 1925, art. 6371). These two presumptions arise from known facts. But there seem to be no facts upon which further presumptions may be indulged. The profoundest mystery obscures every other circumstance leading up to and surrounding the tragic event. Campos seemed to have been a man of ordinary intelligence, habits, industry. He had busied himself throughout the night in attending to the matter of irrigating the corn patch. He had been engaged in that and similar tasks in that immediate vicinity and under similar conditions for months. He knew the precise lay of the land, the location of the irrigation canal, of the highway, of the railroad, and the speed and frequency of trains passing to and fro. The railroad tracks were straight in the vicinity of the accident, the train lights were burning, the noise of the train was heard, and the vibrations from its movement were felt in the vicinity about as usual. Campos' body showed no injuries other than at the point at which it was severed, and blood marks and other circumstances showed it had not been dragged. The circumstances lead with apparent certainty to the conclusion that the body was struck by no other part of the train than the wheels, which actually ran over it. All these facts and circumstances and inferences arising therefrom inevitably drive the searcher of tangible facts into realms of purest conjecture, excluding all conclusions of actionable facts. It should be added that both the engineer and fireman of the train which killed Campos testified in the case. Both testified that they never saw any person on or near the tracks in that vicinity, and did not know or hear of the accident until they were advised of it at Brownsville late in the day it occurred.

So the most the record shows is that appellee's train killed Campos, and that the train operatives negligently failed to sound the whistle or ring the bell for the crossing

near which the accident happened. These two findings are not sufficient to establish the liability of appellee for the death of Campos. The burden of proof was upon appellant to show, not only that decedent lost his life by an act of appellee's servants, and that the servants were negligent in failing to sound the whistle and ring the bell as the train approached said crossing, but that these negligent acts had some causal connection with the accident, and were the proximate cause of the resulting injury. It is quite obvious that appellant has failed to meet this burden, however harshly the rule may operate upon her in this case.

Assuming that the duty of ringing the bell and sounding the whistle was intended for the benefit of Campos, who was not shown to have been on the crossing at or about the time the train approached, there is no circumstance in the case tending to show that this omission had any relation to the accident, or caused or contributed in any degree to that event. In short, there is nothing in the record that would warrant an inference that the failure to give those signals was in any sense or to any degree the proximate cause of Campos' death. In this situation the trial court properly directed a verdict for appellee. Ry. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; Ry. v. McHowell (Tex. Civ. App.) 278 S. W. 258; Id. (Tex. Civ. App.) 2 S.W.(2d) 550.

Who can say what brought about the accident? Who can say it was occasioned by any particular act of either party, or any combination of such acts? The decedent was quite familiar with the premises. He was an intelligent man, with all his senses in play, going about over those premises in his work on foot as he had been doing the whole night through, crossing and recrossing the railroad tracks, opening and closing the sluice gates, attending the distribution of water over his crop, up to within a short time of the accident. The heavy freight train approached on a long stretch of straight tracks, its lights burning, its rumblings heard, and its vibrations felt throughout the vicinity. In what posture was he, and how long had he been in that posture, when the train struck him? Was he lying upon the track, as indicated by the absence of bruises upon his body except those made by the wheels as they passed over his body? Had he dozed off to sleep while sitting or lying on the track, weary from the full night's work thereabouts? Why did he not see the headlight of the train, feel its vibrations, hear its rumble as it approached, and get out of its path? Or, in the alternative, why did he go upon the track in spite of all those ominous signals? And, if he disregarded those signals, could a jury say that he would have regarded bell and whistle, which could have been no more effective warning than lights and rumbling and vibration? Obviously no jury could determine the proximate cause of the accident, and the trial court correctly declined to submit that issue to a jury. And, in the absence of a determination of that issue, it would have been futile to submit any other.

The judgment is affirmed.